IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAWRENCE EBURUOH,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.

    Defendant.

CIVIL ACTION
NO. 20-6188

**<u>OPINION</u>**

**Slomsky, J.**                                                                                              **August 3, 2021**

**I.    INTRODUCTION**

      This action arises out of a foreclosure on real estate and a car accident unrelated to the foreclosure. (<u>See</u> Doc. No. 1 ¶¶ 5-21.) On April 18, 2018, after months of missed mortgage payments, Wells Fargo Bank ("Defendant" or "Wells Fargo") foreclosed on Plaintiff Lawrence Eburuoh's real property. Defendant obtained a judgment against Plaintiff in the Delaware County Court of Common Pleas (the "Foreclosure Action"), and the property was subsequently sold at a Sherriff's sale. (<u>See</u> Doc. No. 6 at 3.)

      Before the Foreclosure Action commenced, a car crashed into Plaintiff's property, and Plaintiff was issued an insurance check to cover the damage to the property. (<u>See</u> Doc. No. 1 ¶ 9.) Plaintiff mailed the check to Wells Fargo, an insured party on the insurance covering the property, for endorsement but never received a response. (<u>See</u> <u>id.</u> ¶ 12.) Despite asking Wells Fargo for return of the check properly endorsed by them, and not receiving it, Plaintiff never made this an issue during the Foreclosure Action. (<u>See</u> Doc. No. 6 at 24.) Instead, Plaintiff now asserts in the action filed in this Court that Wells Fargo committed fraud by withholding the check, and by making fraudulent statements in the Foreclosure Action. (<u>See</u> Doc. No. 1 ¶¶ 22-44.) Plaintiff also

1

alleges that as a result of the Foreclosure Action, he suffered emotional distress for which he seeks compensatory and punitive damages. (See id. ¶¶ 35-38.)

In response to Plaintiff's accusations, Wells Fargo filed a Motion to Dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). (Doc. No. 6 at 10.) In the Motion to Dismiss, Wells Fargo argues that the Complaint should be dismissed because the claims are barred by res judicata, the Rooker-Feldman doctrine, Pennsylvania's Judicial Privilege law, and because the allegations fail to state a claim. (See id. at 12-26.) The Court need not address each of these defenses because res judicata precludes the claims made by Plaintiff in the Complaint. In addition, Plaintiff's intentional infliction of emotional distress claim will be dismissed for failure to state a claim under Rule 12(b)(6).

## II.   BACKGROUND

### A. The Prior Foreclosure Action

Lawrence Eburuoh apparently purchased a residential house at 6809-6811 Marshall Road, Upper Darby, Pennsylvania in 2008. (See Doc. No. 6 at 8.) To finance the purchase, Plaintiff executed on June 2, 2008 a Home Equity Line of Credit Mortgage (the "Mortgage") with Wachovia Bank, N.A. in the amount of $116,000. (See id. at 2.) Wells Fargo merged with Wachovia Bank, N.A. and assumed the mortgage on Plaintiff's home. (See id., Ex. 1.)

From March 2017 until June 2017, Plaintiff failed to make mortgage payments, and defaulted on the note and mortgage. (See Doc. No. 6 at 2.) The amount owed for this period was "$1,753.46, plus some accumulated charges and fees." (Doc. No. 1 ¶ 25.) Nearly a year later, on April 18, 2018, Wells Fargo initiated a foreclosure action in the Delaware County Court of Common Pleas to foreclose on the property. (See Doc. No. 6 at 3.) The Foreclosure Action Complaint (the "Foreclosure Complaint") named Lawrence Eburuoh and Wells Fargo as parties. (See id., Ex. 1.) It alleged that Wells Fargo had possession of the promissory note and now is the

original payee on the note. (See id.) According to the Foreclosure Complaint, as of April 9, 2018 the amount Plaintiff owed on the mortgage was $182,511.99. (See id.) On April 9, 2018, Wells Fargo sought an in rem judgment in mortgage foreclosure for the amount due. (See id.)

On June 14, 2018, Plaintiff filed an answer and new matter in the Foreclosure Action and after discovery Wells Fargo moved for summary judgment. (See Doc. No. 6 at 3; see also id., Ex. 2.) On October 16, 2018, the Delaware County Court of Common Pleas granted Wells Fargo's motion for summary judgment in the Foreclosure Action, and judgment was entered in the amount of $184,466.41. (See Doc. No. 6 at 3.) Thereafter, a sheriff's sale of the property was scheduled, and the property was sold to a third-party purchaser. (See id.)

### B. Plaintiff Receives the Insurance Check

Meanwhile, as noted earlier, a car allegedly crashed into the mortgaged property on June 17, 2017. (See Doc. No. 1 ¶ 5.) Plaintiff promptly reported the accident to his insurance company, Wesco Insurance Company ("Wesco"). (See id. ¶ 7.) On or about January 17, 2018, Wesco informed Plaintiff that it had completed its investigation and forwarded a check to Plaintiff in the amount of $30,602.44 for "rebuilding [] the damaged property." (Id. ¶¶ 8-9; Doc. No. 6 at 3.) Wesco made the check out to both Plaintiff and Defendant. (See Doc. No. 1 ¶¶ 8-9.) Upon receipt of the check, Plaintiff signed the back of the check and forwarded it to Defendant for endorsement. (See id. ¶ 10.)

While waiting for Wells Fargo to return the insurance check, Plaintiff hired a construction company, Siby Construction, to immediately begin rebuilding the damaged property. (See id. ¶ 11.) Plaintiff also spent $6,800 of his own money to "stabiliz[e] the dangling wall to avoid injury to the public." (Id. ¶ 26 n.1.)

3

After waiting for the check to be returned by Wells Fargo, Plaintiff began telephoning and emailing Wells Fargo to release the money so that he could make repairs on the mortgaged property, but no response was received from them. (See id. ¶ 12.) On October 30, 2020, over two years after the check was mailed to Wells Fargo, they sent a letter to Plaintiff explaining that they had placed the money in an escrow account. (See id. ¶ 20; Doc. No. 7, Ex. 1 at 2.)

### C. Procedural History

On December 7, 2020, Plaintiff, proceeding pro se, filed suit against Defendant Wells Fargo seeking compensatory and punitive damages for alleged fraud and intentional infliction of emotional distress. (See Doc. No. 1 ¶¶ 22-44.) Plaintiff specifically alleges: (1) fraudulent foreclosure ("Count One"); (2) common law fraud ("Count Two"); (3) intentional infliction of emotional distress ("Count Three"); and (4) fraudulent misrepresentation ("Count Four"). (See id.) Plaintiff seeks compensatory damages in the amount of $330,602.44 and punitive damages in the amount of $900,000.[1] (See id. ¶¶ 39, 44.)

Plaintiff alleges that the Foreclosure Action was fraudulent because:

> Defendant intentionally withheld the money Plaintiff was supposed to use to repair the damages on his property so as Plaintiff could not be able to make those repairs, so as Plaintiff could not be able to get the place rentable in order to continue to make his mortgage payments, so that Wells Fargo could say that Plaintiff was not meeting h[i]s mortgage obligations.

(Id. ¶ 24.)

Plaintiff also alleges that Defendant committed common-law fraud by withholding the insurance check. (See id. ¶ 29.) Plaintiff explains that Defendant "mistakenly placed Plaintiff's

---

[1] Plaintiff seeks relief in the amount of $300,000 for the loss of his property, $30,602.44 for the insurance check, and $900,000 in punitive damages for his alleged emotional distress. (See Doc. No. 1 ¶¶ 26, 39.)

insurance money in escrow . . . and such cover-up would not have come out in the open if the IRS did not catch them in the lies." (Id. ¶ 30.)

Next, Plaintiff alleges that Defendant intentionally inflicted emotional distress on him. (See id. ¶ 35.) He argues that by filing the "fraudulent foreclosure" action, Defendant acted intentionally and recklessly because "Defendant [knew] that such action should not have been filed given all the circumstances in this case. And it caused Plaintiff great emotional distress." (Id.) Plaintiff states that the conduct was extreme and outrageous because he was prevented from using the insurance check to make repairs on the damaged property. (See id. ¶ 36.) He also asserts that the Foreclosure Action directly caused him "great emotional distress" and "depression" because he lost his property and never received the insurance check. (Id. ¶ 37.) He adds that he considered going out of business as a result of the foreclosure. (See id. ¶ 38.)

Plaintiff's final claim is based on representations made by Wells Fargo. (See id. ¶¶ 41-44.) Specifically, Plaintiff argues that "[D]efendant committed intentional fraudulent misrepresentation when it made Plaintiff believe that an alternative to foreclosure was in the works which helped to disarm Plaintiff from mounting any meaningful defense to the foreclosure." (Id. ¶ 42.) On October 31, 2018, Plaintiff received a letter from Elisabeth O'Connor, an employee in Wells Fargo's Home Preservation Department, that outlined steps Plaintiff could take to avoid foreclosure. (See id. ¶ 43.) Plaintiff claims that he and his attorneys relied on this letter and believed that the foreclosure would not continue, which is why he did not raise any defense and failed to object to the motion for summary judgment in state court. (See id. ¶¶ 43-44.)

On February 3, 2021, in response, Wells Fargo filed a Motion to Dismiss the Complaint. (Doc. No. 6.) Wells Fargo moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). (See id. at 4-6.) Specifically, as noted

above, Wells Fargo raises res judicata, the Rooker-Feldman doctrine, Pennsylvania's Judicial Privilege law, and the statute of limitations as bars to Plaintiff's claims.[2]  (See Doc. No. 6.)

On February 9, 2021, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss. (Doc. No. 7.)  In his Response, Plaintiff argues that res judicata does not bar his claims because they were not raised in the Foreclosure Action. (See id. at 4.)  Plaintiff also argues that the Court does have subject matter jurisdiction over this case and that the Rooker-Feldman doctrine does not apply.  (See id. at 2.)  He distinguishes the claims regarding the October 10, 2019 Foreclosure Action and Wells Fargo's handling of the insurance check.  (See id.)  Plaintiff narrows his claim by stating that "Plaintiff merely claimed that after he endorsed his insurance check and sent it to Wells Fargo Bank . . . Wells Fargo seized the check and refused to return it to Plaintiff . . . while concurrently initiating a foreclosure action against the property Defendant knew was not rentable due to the damages to the property." (Id. at 2.)  Plaintiff asserts that his injury "did not come from the foreclosure judgment, but from Wells Fargo Bank's action of seizing Plaintiff's insurance payout." (Id. at 3.)

In addition, Plaintiff claims that because Wells Fargo fails to point to a specific communication in the Foreclosure Action warranting application of Pennsylvania's Judicial

---

[2]  Recently, the Third Circuit distinguished the Rooker-Feldman doctrine from issue and claim preclusion and held, "the doctrine is confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Vuyanich v. Smithton Borough, --- F.4th ----, No. 20-1813, 2021 WL 3161073, at *3-4 (3d Cir. July 27, 2021) (internal quotation marks omitted) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).  The Third Circuit also emphasized the narrowness of the doctrine and focused its inquiry on the "injuries complained of" and whether plaintiff invites the district court to "review and reject" the prior state court judgment. Id. (citing Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 168 (3d Cir. 2010)).  For reasons noted infra, however, the Court need not decide whether Rooker-Feldman bars Plaintiff's claims here.

Privilege law, the Privilege does not apply.  (See id.)  Finally, Plaintiff argues that his claims are not barred by the statute of limitations and reaffirms that the Complaint sufficiently alleges fraud and intentional infliction of emotional distress.  (See id. at 5-7.)

On February 19, 2021, Defendant filed a Reply in further Support of its Motion to Dismiss the Complaint.  (Doc. No. 10.)  Defendant re-affirms that Plaintiff's claims are barred by res judicata and that the Rooker-Feldman doctrine should apply.  (See id. at 4-7.)  Defendant emphasizes that Plaintiff's claims are based on "the action of the Defendant in filing and obtaining foreclosure on Plaintiff's property."  (Id. at 5.)  Further, Defendant states that Pennsylvania's Judicial Privilege law does apply because "Plaintiff's claims are all premised on the filing of the state court litigation."  (Id. at 7.)  Defendant also argues that "Plaintiff's reliance on the discovery rule is misplaced," and the statute of limitations should bar Plaintiff's fraud claims.  (Id. at 8.)  Finally, Defendant highlights that foreclosure proceedings do not rise to the level of "intolerable or outrageous conduct" required to prove intentional infliction of emotional distress and that no required physical harm has been alleged to support this claim.  (Id. at 10.)

In sum, the instant Complaint alleges fraud and intentional infliction of emotional distress by Wells Fargo.  (See Doc. No. 1 ¶¶ 22-44.)  The Foreclosure Action produced a judgment foreclosing on Plaintiff's property after Plaintiff defaulted.  (See Doc. No. 6, Ex. 1.)  At about the same time, Plaintiff's property was damaged by a car accident and Wells Fargo failed to release the insurance check to Plaintiff.  (See Doc. No. 1 ¶¶ 5, 20-21.)  Plaintiff alleges that Wells Fargo's fraudulent actions caused him harm because he lost his house in the Foreclosure Action, and he seeks restitution for the loss in the value of his home and insurance check.  (See id. ¶¶ 31, 39.)

### III.   STANDARD OF REVIEW

The motion to dismiss standard under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal, it is clear

that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. at 30 (alteration in original) (quotation marks omitted) (quoting Iqbal, 556 U.S. at 675, 679). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—

8

'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

In addition, any claim that was, or could have been, litigated in state court is barred by res judicata and subject to dismissal under Rule 12(b)(6). See Manu v. Nat'l City Bank of Ind., 471 F. App'x 101, 105 (3d Cir. 2012). In Manu, the court explained:

> In all other respects, res judicata bars consideration of any issues that could have been raised in the foreclosure action or Manu's petition to set aside the sheriff's sale. "When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment;" and, in doing so, a federal court applies "the same preclusion rules as would the courts of that state." Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir.1993) (citations omitted).

Id.

With regard to pro se complaints, the Third Circuit has held that they must be "liberally construed." Kissell v. Dep't of Corrs., 634 F. App'x 876, 878 (3d Cir. 2015) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "A pro se plaintiff complaint, however inartfully pleaded, must be held to less stringent standards than form pleadings drafted by lawyers." Butler v. City of Philadelphia, No. 11–7891, 2013 WL 5842709, at *1 (E.D. Pa. Oct. 31, 2012) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Further, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Kissell, 634 F. App'x at 878-79 (quoting Phillips, 515 F.3d at 233).

**IV.    ANALYSIS**

Although the present action on the surface appears to be distinct from the Foreclosure Action, comparing the allegations in the Complaint with the allegations in the Foreclosure Action shows that the two are intertwined and based on the same cause of action. The Foreclosure Action

9

was a final, valid judgment between the same parties involved in the present action. Further, the instant case and prior Foreclosure Action involve the same facts, documents, and witnesses. Although Plaintiff failed to raise his defenses during the Foreclosure Action, res judicata still applies to claims which could have been raised in the prior state court action. See Laychock v. Wells Fargo Home Mortg., 399 F. App'x 716, 719 (3d Cir. 2010). Moreover, Plaintiff's claim of intentional infliction of emotional distress fails to sufficiently allege any physical harm or intolerable or outrageous conduct by Wells Fargo, and for these reasons, it fails to state a claim for which relief should be granted. See Di Loreto v. Costigan, 600 F. Supp. 2d 671, 691 (E.D. Pa. 2009).

A.  **Plaintiff's Fraud Claims are Barred by Res Judicata**

Before returning to a discussion of the facts asserted in this case, an extensive recitation of the doctrine of res judicata is warranted.

When considering the doctrine of res judicata, "federal courts are required to give state court judgments the same preclusive effect that the issuing state courts would give them." Moncrief v. Chase Manhattan Mortg. Corp., 275 F. App'x 149, 153 (3d Cir. 2008). Further, "the preclusive effect of a state-court judgment in a subsequent federal action depends on the law of the state that adjudicated the original action." Greenleaf v. Garlock, Inc., 174 F.3d 352, 357 (3d Cir. 1999). Here, the underlying foreclosure action was adjudicated in Pennsylvania, so Pennsylvania preclusion law applies.

In Duhaney v. Attorney General of the United States, the Third Circuit summarized Pennsylvania's res judicata law:

> Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same "cause of action" as the first suit. See In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). A party seeking to invoke res judicata must establish three elements: "(1) a final judgment on the merits in a

10

prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Id. (quotation marks omitted).

621 F.3d 340, 347 (3d Cir. 2010). Under Pennsylvania law, "[a]ny final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." Manu, 471 F. App'x at 105 (citing Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995)).

In Davis v. Wells Fargo, the Third Circuit explained the crux of res judicata analysis:

> In evaluating whether those elements exist, we do not proceed mechanically, "but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit. In so doing, we avoid piecemeal litigation and conserve judicial resources." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 277 (3d Cir. 2014) (internal quotation marks and brackets omitted), cert. denied, --- U.S. ----, 135 S. Ct. 1738, 191 L.Ed.2d 702 (2015). "The purpose of res judicata is to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs, 726 F.3d 387, 394 (3d Cir. 2013) (quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L.Ed.2d 308 (1980)).

824 F.3d 333, 341-42 (3d. Cir. 2016). Not only does res judicata apply to claims that were actually litigated, "but also to those that could have been litigated in the first proceeding, so long as they were part of the same cause of action." Laychock, 399 F. App'x at 719. Claims are part of the same cause of action when they "aris[e] out of the same transaction or occurrence." Jackson v. Dow Chem. Co., 902 F. Supp. 2d 658, 672 (E.D. Pa. 2012) (alteration in original) (internal quotation marks omitted) (quoting Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991)). When analyzing whether claims arise out of the same transaction or occurrence, "the focus of the inquiry is 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.'" Duhaney, 621 F.3d at 348 (quoting United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984)). Thus, in order to preserve judicial resources and prevent

11

inconsistent decisions, the court must consider (1) whether there was a previous final judgment, (2) involving the same parties, and (3) the similarities between the acts complained of, facts alleged, witnesses, and documentation.  See id. at 347; Davis, 824 F.3d at 341-42.

The Third Circuit has discussed these questions on numerous occasions in similar suits involving foreclosure actions.  For example, in Manu, the Third Circuit explained:

> It is true, as Manu argues in her brief on appeal, that the assertion of counterclaims is narrow under Pa. R. Civ. Pro. 1148, see Green Tree Consumer Discount Co. v. Newton, 909 A.2d 811, 815–16 (Pa. Super. Ct. 2006) (action in mortgage foreclosure is strictly an in rem proceeding and therefore a counterclaim for a set-off under TILA can only be asserted in an action which contemplates a personal judgment); Mellon Bank, N.A. v. Joseph, 267 Pa. Super. 307, 406 A.2d 1055, 1060 (1979) (claims that arose once the mortgage was in default, and were not part of, or incident to, the creation of the mortgage itself, could not be pled as counterclaims). Under Pa. R. Civ. Pro. 1148, Manu could only raise a counterclaim that went to the existence or validity of the mortgage.  See Chrysler First Business Credit Corp. v. Gourniak, 411 Pa. Super. 259, 601 A.2d 338, 341 (1992). . . .
>
> But even if Manu could not have technically pled her claims as counterclaims, Rooker-Feldman and res judicata would still bar them where she could and did assert those claims as defenses. . . .  Asserting different theories of recovery in a second lawsuit will not defeat the application of res judicata where the events underlying the two actions are essentially similar.  See U.S. v. Athlone Indus., Inc., 746 F.2d 977, 983-84 (3d Cir. 1984).

Manu, 471 F. App'x at 105-06 (emphasis added).

Importantly, even if a party claims it was harmed by fraudulent conduct prior to the state court judgment, those claims would be barred by Pennsylvania's res judicata law because they are part of the same cause of action.  See Sherk v. Countrywide Home Loans, Inc., No. 08-5969, 2009 WL 2412750, at *6 (E.D. Pa. Aug. 5, 2009).  In Sherk, the court held that plaintiffs could have raised the issue during the state court foreclosure action, but did not, and emphasized that state court was the appropriate forum for these issues.  See id.

Similarly, in Moncrief, the Third Circuit held that plaintiff's claims regarding the legality of a foreclosure were barred by res judicata because they were "predicated on the same underlying

12

transaction (the mortgage transaction) that was the basis for the foreclosure action." 275 F. App'x at 153 (citing Athlone Indus., Inc., 746 F.2d at 983-84).  The court reasoned that "[e]ven if Moncrief had no reason to know of facts underlying a fraud claim before the foreclosure action was commenced, the foreclosure action itself would have put her on notice that something was amiss with her mortgage." Id.

Moreover, in Conte v. Mortgage Electronic Registration Systems, another court in this District held:

> A claim challenging a party's conduct that occurred prior to the state court entering judgment in a foreclosure proceeding may not be barred by the Rooker-Feldman doctrine but instead is subject to the principles of preclusion under res judicata. See [Hua v. U.S. Bank Nat. Ass'n, No. 14-6767, 2015 WL 1071606, at *3 (E.D. Pa. Mar. 11, 2015)] (observing that if the source of the injury is defendant's actions "[t]he federal suit is an independent claim that is not barred by the Rooker-Feldman doctrine, and is, instead, subject to state law principles of preclusion." (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293, 125 S. Ct. 1517, 161 L.Ed.2d 454, . . . (2005)). . . .
>
> The conduct Plaintiffs complain of occurred prior to the state court foreclosure proceeding.  The time and place to challenge the Defendants' conduct was in the state court proceedings, including an appeal to the proper Pennsylvania appellate court.  Because Plaintiffs chose not to bring these direct causes of action challenging Defendants' conduct in state court, they cannot now bring them in federal court.  Moncrief, 275 F. App'x at 153 (dismissing claim pursuant to res judicata where plaintiff could have brought challenge to bank's standing during the foreclosure action); Laychock, 2008 WL 2890962, at *2 (dismissing complaint pursuant to the Rooker–Feldman doctrine and res judicata).

No. 14-6788, 2015 WL 1400997, at *4-6 (E.D. Pa. Mar. 27, 2015) (emphasis added).

Turning to the present action, res judicata bars the litigation of Plaintiff's claims in this Court.  In accordance with the above-mentioned cases, Plaintiff challenges here the validity of the Foreclosure Action and the conduct of Wells Fargo prior to the foreclosure. (See Doc. No. 1 ¶¶ 22-44.)  Count One alleges the foreclosure was fraudulent because:

> Defendant had the Plaintiff believe that he could save his property from foreclosure by pretending to be reviewing an application he was advised to file with Wells Fargo to avoid forfeiture while at the same time vigorously pursuing foreclosure.
>
> Defendant intentionally withheld the money Plaintiff was supposed to use to repair the damages on his property so as Plaintiff could not be able to make those repairs, so as Plaintiff could not be able to get the place rentable in order to continue to make his mortgage payments, so that Wells Fargo could say that Plaintiff was not meeting [his] mortgage obligations.

(Id. ¶¶ 23-24.) Plaintiff relies on the allegation that Wells Fargo withheld the $30,602.44 insurance check to raise a fraudulent foreclosure claim. (See id.) He reasons that as a result of this conduct, Wells Fargo intentionally, fraudulently foreclosed on his home, and Plaintiff lost the value of his house—$300,000—and the amount of the insurance check—$30,602.44. (See id. at ¶¶ 26-27.)

These allegations involve the same parties, Lawrence Eburuoh and Wells Fargo, and are based on the Foreclosure Action wherein judgment was entered against Plaintiff on October 16, 2018. (See Doc. No. 6, Ex. 2.) The present action and the Foreclosure Action share material facts, witnesses, and documents, and the events underlying the two actions "are essentially similar." Manu, 471 F. App'x at 105-06. For example, the factual basis of the default and foreclosure, the proceedings in state court, and the findings of the court there are relevant in this case. Moreover, the events involving the auto crashing into the property, the insurance payment, and the sending, receiving, and keeping of the check by Wells Fargo were relevant to the outcome of the foreclosure action and could have been raised as a defense in that state court action. The same facts are central to the claims here in the Complaint.

Furthermore, during the Foreclosure Action, Plaintiff could have raised matters regarding the application to avoid forfeiture Wells Fargo sent him. (Doc. No. 1 ¶¶ 23-24.) Comparing the present case to Moncrief, Plaintiff's claims in Count One regarding the foreclosure are "predicated

14

on the same transaction" as the Foreclosure Action and are thus barred by res judicata.[3] Moncrief, 275 F. App'x at 153.

Similarly, the claims asserted in Counts Two (common law fraud) and Four (fraudulent misrepresentation) are also barred by res judicata. Count Two appears to be based on the same facts as alleged in Count One. (See Doc. No. 1 ¶¶ 22-31.) In Count Four, Plaintiff alleges that his attorneys did not raise defenses in the Foreclosure Action in reliance on the letter from Wells Fargo's Home Preservation Department, which outlined steps Plaintiff could take to avoid foreclosure. (See id. ¶ 43.) Plaintiff contends that this letter is the basis for the "intentional fraudulent misrepresentation" claim, because Plaintiff "believed that the foreclosure would not continue forward." (Id. ¶ 44.)

The claims asserted in Count Two (common law fraud) and Count Four (fraudulent misrepresentation) are based on the same facts, documents, and witnesses as presented in the Foreclosure Action and his defenses could have been raised in state court. See Duhaney, 621 F.3d at 347; Davis, 824 F.3d at 341-42; Manu, 471 F. App'x at 105-06. For this latter reason, it is irrelevant that the alleged conduct occurred prior to the Foreclosure Action because the claims arise from the same cause of action and any defenses could have been raised in the Foreclosure Action. See Sherk, 2009 WL 2412750, at *6; Conte, 2015 WL 1400997, at *6. Therefore, since

---

[3] In Moncrief, following the foreclosure action, Moncrief refused to vacate the property and EMC Mortgage Corporation filed an ejectment action. See Moncrief v. Chase Manhattan Mortg. Corp., 275 F. App'x 149, 152 (3d Cir. 2008). In response, "Moncrief attacked the foreclosure action's merits, claimed that the sheriff's sale was void, and that the ejectment action was thus illegal." Id. The Monroe County Court of Common Pleas held that Moncrief's claims were barred by issue preclusion. See id. Meanwhile, Moncrief filed a federal complaint alleging fraud and that Citibank lacked standing in the foreclosure action. See id. at 153-54. Nevertheless, the Third Circuit held that these claims were also precluded. See id. Thus, it is evident that the courts prevented piecemeal litigation by applying res judicata.

each claim and defense could have been raised during the prior Foreclosure Action, they are barred by res judicata.  See Conte, 2015 WL 1400997 at *6.

Plaintiff asserts that he did not raise any defense during the Foreclosure Action for two reasons: (1) he relied on a letter from Defendant's Home Prevention Department to avoid foreclosure; and (2) it was not until the October 30, 2020 letter notifying Plaintiff of the insurance money being placed in escrow that he became aware of fraud.  (See Doc. No. 1 ¶ 43.)  However, even if Plaintiff did not know the facts underlying the alleged fraud before the Foreclosure Action, "the foreclosure action itself would have put [him] on notice that something was amiss."  Moncrief, 275 F. App'x at 153.  Thus, Plaintiff could have, and should have, raised these issues during the Foreclosure Action, or on appeal in state court following the Foreclosure Action.  He cannot now raise these issues in federal court.  See id.

In sum, Counts One, Two, and Four are barred by Pennsylvania's res judicata doctrine because they are based on: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action.  See Duhaney, 621 F.3d at 347.  The present action is "essentially similar" to the Foreclosure Action because each claim arises from the same underlying transaction and operative facts.  Manu, 471 F. App'x at 106 (citing Athlone Indus., Inc., 746 F.2d at 983-84).  Because the acts complained of could have been raised in the prior Foreclosure Action, Plaintiff's claims are barred by res judicata.  See Laychock, 399 F. App'x at 719; Conte, 2015 WL 1400997, at *4-6.  Finally, the Court finds Plaintiff's argument that he was unaware of the fraud until after the Foreclosure Action unpersuasive because the Foreclosure Action itself would have put Plaintiff on notice "that something was amiss."  Moncrief, 275 F. App'x at 153.

B.    **Plaintiff's Intentional Infliction of Emotional Distress Claim Fails to State a Claim Upon Which Relief Can Be Granted**

Plaintiff's intentional infliction of emotional distress claim is a state law claim that can be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. A claim for intentional infliction of emotional distress requires four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Dehart v. HomeEq Servicing Corp., 679 F. App'x 184, 190 (3d Cir. 2017) (quoting Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910, 914 (3d Cir. 1982)). "The gravamen of the tort is outrageous conduct; in Pennsylvania, 'courts have found intentional infliction of emotional distress only where the conduct at issue has been atrocious and utterly intolerable in a civilized community.'" Goodson v. Kardashian, 413 F. App'x 417, 418 (3d Cir. 2011) (internal quotation marks omitted) (quoting Clark v. Twp. of Falls, 890 F.2d 611, 623 (3d Cir. 1989).

> When considering these factors, other courts in this district have held:
>
> Defendants' reasonable pursuit of its legal rights cannot constitute extreme and outrageous conduct for purposes of establishing intentional infliction of emotional distress. See Clark v. Caln Twp., No. 90-1551, 1990 WL 99123, at *5 (E.D. Pa. July 11, 1990) ("When an individual does no more than insist on his legal rights in a permissible way, he will not be held liable for intentional infliction of emotional distress, even though he is aware that such insistence will cause emotional distress."); Numerof v. Cont'l Title Ins. Co., No. 87-6874, 1987 WL 30135, at *5 (E.D. Pa. Dec. 24, 1987) ("Where a party has a legal right to proceed with foreclosure, the sending of a notice of intention to foreclose as required by state procedure can give rise to no cause of action for intentional infliction of emotional distress.")

Kilesh v. Select Portfolio Servicing Inc., No. 09–2726, 2010 WL 11534314, at *6 (E.D. Pa. June 30, 2010) (emphasis added).

Additionally, under Pennsylvania law, Plaintiff is required to allege "some type of physical harm due to the defendant's outrageous conduct to satisfy the severe emotional distress element."

Di Loreto, 600 F.Supp.2d at 691 (quotation marks omitted) (quoting Livingston v. Borough of Edgewood, No. 08-812, 2008 WL 5101478, at *6 (W.D. P.a. Nov. 26, 2008)); see also Huggins v. Coatesville Area. Sch. Dist., No. 07-4917, 2008 WL 4072801, at *39-40 (E.D. Pa. Aug. 27, 2008).

Viewing the facts alleged in the Complaint in the light most favorable to Plaintiff, Count Three fails to sufficiently allege facts that entitle Plaintiff to relief. Here, Plaintiff merely alleges that Defendant's "fraudulent foreclosure" was "extreme and outrageous," and that the conduct caused him "great emotional distress." (Doc. No. 1 ¶¶ 36-37.) Plaintiff's intentional infliction of emotional distress claim, however, fails for two reasons: (1) Plaintiff fails to sufficiently allege that Wells Fargo's conduct was extreme and outrageous; and (2) he suffered no physical harm because of Wells Fargo's actions.

First, Plaintiff does not show that the alleged distress caused by Wells Fargo's conduct was extreme and outrageous. Plaintiff claims that the Foreclosure Action caused him emotional distress resulting in depression and thoughts of closing his business. (See id. ¶ 38.) Similar to Numerof, however, an adverse judgment in a state foreclosure action is not so extreme or outrageous that it gives rise to intentional infliction of emotional distress. See Numerof, 1987 WL 30135, at *5. Even given the fraud allegations, Plaintiff fails to adequately assert Defendant commenced the Foreclosure Action with "atrocious and utterly intolerable" conduct. Goodson, 413 F. App'x at 418; see also Messer v. First Fin. Fed. Credit Union, No. 11-4144, 2012 WL 3104397, at *13-14 (E.D. Pa. July 30, 2012) (holding that alleged fraudulent conduct related to repossessing plaintiff's car did not rise to the extreme and outrageous level of intentional infliction of emotional distress). Thus, Plaintiff does not sufficiently allege that Wells Fargo's conduct was severe and outrageous.

18

Second, Plaintiff fails to allege that Wells Fargo's conduct physically harmed him. Considering Plaintiff is proceeding pro se, even if the Court construes the Complaint liberally, nothing in the Complaint can be construed as alleging that Wells Fargo physically harmed Plaintiff. See Kissell, 634 F. App'x at 878 (citing Erickson, 551 U.S. at 94). Therefore, without alleging physical harm, Plaintiff cannot claim that the Foreclosure Action or any of the alleged fraud amounts to intentional infliction of emotional distress. See Di Loreto, 600 F.Supp.2d at 691.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint will be granted. (Doc. No. 6.) An appropriate Order follows.